FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 31, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HEATHER R., | NO: 1:18-CV-3069-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12, 14. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 12, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 14.

**JURISDICTION**

Plaintiff Heather R.[1] protectively filed for supplemental security income and disability insurance benefits on March 20, 2014, alleging an onset date of July 11, 2013. Tr. 229-43. Benefits were denied initially, Tr. 125-31, and upon reconsideration, Tr. 132-42. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Mary Gallagher Dilley on March 14, 2017. Tr. 51-79. Plaintiff had representation and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 13-35, and the Appeals Council denied review. Tr. 1. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 27 years old at the time of the hearing. *See* Tr. 56. She graduated from high school and had "some college." Tr. 57. Plaintiff lives with her parents. Tr. 56. She has work history as a housekeeper, caregiver, fast food worker, and kitchen supervisor. Tr. 61-62, 74-75. Plaintiff testified that she

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

cannot do any of her past work because the stressful environment "brings on a manic episode and a manic attack basically and brings me to being back to being unstable." Tr. 62.

Plaintiff testified that she has a clean and sober date of May 31, 2014. Tr. 58. She reported that after becoming clean and sober, her mental health symptoms "became more prevalent" but she has since developed better coping mechanisms. Tr. 64. Plaintiff testified that she suffers from anxiety, seizures, manic and depressive episodes, conversion disorder, PTSD, and joint pain. Tr. 63-67, 72. She testified that she lives with her parents and they are her caregivers, including: cooking for her, taking care of her money, disbursing her medications, and reminding her to do self-care. Tr. 68. Plaintiff "stay[s] close to home," aside from going to NA meetings, and counseling twice a month. Tr. 70-73.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ must determine whether the DAA is a material factor contributing to the disability. 20 C.F.R. § 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 11, 2013, the alleged onset date. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: substance abuse with psychosis; affective disorders variously diagnosed as bipolar, depressive, and unspecified mood disorders; anxiety; borderline personality disorder; and posttraumatic stress disorder. Tr. 18-19. At step three, the ALJ found that Plaintiff's impairments, including the substance use disorder, meet Listing 12.03 of 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 20. However, the ALJ found that if Plaintiff stopped the substance use, she would continue to have a severe impairment or combination of impairments at step two, but the impairments would not meet or medically equal the severity of a listed impairment at step three. Tr. 21. The ALJ then determined that if the Plaintiff stopped the substance use, she would have the RFC

> to perform a full range of work at all exertional levels. In terms of nonexertional limitations, she must avoid concentrated exposure to hazards such as moving machinery and heights. She can perform simple, routine tasks. She can have superficial contact with the public and coworkers.

Tr. 22. At step four, the ALJ found that if Plaintiff stopped substance use, she would be able to perform her past relevant work as a cleaner, housekeeping. Tr. 28. At step five, the ALJ found that if Plaintiff stopped substance abuse, considering Plaintiff's age, education, work experience, and RFC, there would be a

significant number of jobs in the national economy that Plaintiff could perform, such as industrial cleaner, kitchen helper, and laundry worker II. Tr. 28-29. Finally, the ALJ found that substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. Tr. 29-30. Thus, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ erred by finding substance use was a factor material to the finding of disability;

3. Whether the ALJ improperly discredited Plaintiff's symptom claims; and

4. Whether the ALJ erred at step three.

## DISCUSSION

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the 2013 and 2014 opinions of treating provider Mara Fusfield, ARNP, "along with the accompanying disability/incapacity determinations and reviews of medical evidence"; the opinion of examining psychologist, R.A. Cline, Ph.D.; and the opinion of agency reviewing

psychologist Beth Fitterer, Ph.D.  ECF No. 12 at 12-14.  The ALJ and Plaintiff's briefing considered these opinions together; thus, the Court will do the same.

In November 2014, agency reviewing psychologist Beth Fitterer, Ph.D. opined that Plaintiff "would be able to perform simple and some difficulty with complex tasks for a normal work day/week [with] occasional interruptions from [her psychological symptoms]."  Tr. 26, 105, 118.

In August 2013, Mara Fusfield, ARNP, Plaintiff's treating provider, opined that due to "sudden change [in] mental status," she had marked to severe limitations in her ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, crouch, and communicate.  Tr. 393.  Ms. Fusfield noted that Plaintiff required direction to "keep her tracking," and "can't find words or finish sentences."  Tr. 393.  While not specifically identified by the ALJ, this opinion was reviewed by DSHS physician J. Dalton, M.D. who opined that Plaintiff had a marked limitation in "environmental/non-exertional restrictions" and a severe limitation in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  Tr. 399-400.

In December 2013, Ms. Fusfield opined that Plaintiff had marked to severe limitations in her ability to hear and communicate; marked limitations in her ability to walk, lift, carry, handle, push, pull, reach, stoop, and crouch; and was capable of only sedentary work.  Tr. 397-98.  Again, while not specifically identified by the ALJ, Ms. Fusfield's August and December 2013 opinions were reviewed by Myrna

Palasi, M.D., who found marked limitation in postural restrictions and gross or fine motor skill restrictions, and limited Plaintiff to sedentary work. Tr. 402-03. All of the above referenced opinions specifically noted that the effect on Plaintiff's work activity was not "due primarily to alcohol or drug abuse/addiction." Tr. 394, 398, 401, 404. Finally, in August 2014, Ms. Fusfield noted that Plaintiff continued to have difficulty following directions, focusing on topics, reading, comprehending, and retaining information; and she opined that Plaintiff was capable of light work. Tr. 405-07.

In July 2016, Dr. R.A. Cline examined Plaintiff and opined that she had moderate limitations in six basic work activities, and marked limitations in her ability to (1) communicate and perform effectively in a work setting, and (2) maintain appropriate behavior in a work setting. Tr. 973-77.

The ALJ collectively assigned little weight to (1) the portion of Dr. Fitterer's opinion indicating that Plaintiff would have occasional interruptions from her psychological symptoms; (2) the marked limitations assessed by Dr. Cline; and (3) "Ms. Fusfield's assessments, along with the accompanying disability/incapacity determinations and reviews of medical evidence, indicating that the claimant was limited to sedentary or light exertion with postural and motor skill restrictions, that she had some neurobehavioral problem resulting in marked to severe functional limitations, and that she was severely limited in performing activities within a

schedule, maintaining regular attendance, and being punctual within customary tolerances." Tr. 26.

First, as to her physical capacity, the ALJ generally found, without citation to the record, that Ms. Fusfield's assessments and "the accompanying disability/incapacity determinations and reviews of medical evidence indicating [Plaintiff] was limited to sedentary or light exertion with postural and motor skill restrictions are inconsistent with [Plaintiff's] physical treatment history and the objective clinical findings." Tr. 27. Similarly, as to her mental capacity, in the absence of substance abuse, the ALJ found the above cited "portion of Dr. Fitterer's opinion, Ms. Fusfield's opinions and the accompanying disability/incapacity determinations and reviews of medical evidence, Dr. Cline's opinion, and the low GAF scores are inconsistent with [Plaintiff's] longitudinal mental health treatment history and performance on mental status examinations during periods of sobriety." Tr. 27. In support of this finding, the ALJ generally found that with one possible relapse in May 2015, Plaintiff "has maintained her sobriety since mid-2014 with largely unremarkable mental status and tolerable if any side effects of medication." Tr. 27 (citing Tr. 445, 518-19, 537-50, 558, 562, 566-70, 586, 800, 889, 908, 923, 936, 946-48, 1080, 1106, 1227, 1231-57).

Plaintiff argues that the ALJ failed to explain with requisite specificity how the marked to severe portions of the opinions cited by the ALJ were inconsistent with the medical record and objective medical findings. ECF No. 12 at 12-13.

The Court agrees. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). However, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. Here, the Court finds the ALJ failed to summarize and interpret the entirety of the clinical findings in each of the seven distinct medical opinions that were assigned little weight. Tr. 26-27. Thus, the ALJ's wholesale rejection of the marked to severe findings by these treating, examining, and reviewing providers as generally inconsistent with the mental status examination results, without the requisite interpretations of the "facts and conflicting clinical evidence," is not supported by substantial evidence. This was not a specific and legitimate reason for the ALJ to reject the opinions of Dr. Fitterer, Ms. Fusfield, Dr. Dalton, Dr. Palasi, and Dr. Cline.

Second, the ALJ found that Ms. Fusfield's opinions and the accompanying disability/incapacity determinations and reviews of medical evidence, and Dr.

Cline's opinion, were "based in part" on Plaintiff's self-report; "however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of her symptoms in the absence of substance use are not entirely consistent with the evidence." Tr. 27. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the only evidence cited by the ALJ in support of this finding was Dr. Cline's indication that he did not review any records as part of his evaluation of Plaintiff. Tr. 27 (citing Tr. 973). However, the ALJ entirely failed to consider Dr. Cline's mental status examination, which included findings of abnormal thought process and content, abnormal perception, abnormal memory, abnormal abstract thought, and abnormal insight and judgment. Tr. 977. Similarly, the ALJ failed to consider portions of Ms. Fusfield's opinions that referenced objective test results, and corresponding treatment notes from Ms. Fusfield that included mental status findings of impaired insight and judgment, agitated and apathetic affect, and impaired thinking, attention, and concentration. *See* Tr. 392 (negative CT and lumbar puncture, and elevated white blood cell count), 394 (negative drug screens), 411, 422, 589, 600. Neither the ALJ, nor the Defendant, offers any evidence that Dr. Cline and Ms. Fusfield relied "to a large extent" on Plaintiff's subjective complaints as opposed to these clinical findings. Moreover, as conceded by Defendant, "an ALJ may not reject an opinion about a claimant's

mental health for its 'partial reliance' on the claimant's unreliable self-reports."

ECF No. 14 at 8; *Cf. Tommasetti*, 533 F.3d at 1041 (ALJ may reject a physician's

opinion if it is based "to a large extent" on Plaintiff's self-reports). Based on the

foregoing, the ALJ's rejection of these opinions because they were based only "in

part" on Plaintiff's self-report was not a specific and legitimate reason, supported

by substantial evidence.

For all of these reasons, the ALJ did not properly consider Ms. Fusfield,[2] Dr.

Fitterer, Dr. Dalton, Dr. Palasi, and Dr. Cline's opinions, and they must be

reconsidered on remand.

---

[2] The ALJ also noted that Ms. Fusfield "may not have been fully aware of

[Plaintiff's] drug use." Tr. 27. In support of this finding, the ALJ cited Ms.

Fusfield's January 2014 treatment note indicating that Plaintiff had not used heroin

in "more than a year, but in mid-2013 [Plaintiff] was noted to be possibly attending

to hallucinations and her providers suspected that she was not being entirely

forthright about her drug use." Tr. 27 (citing Tr. 347, 369, 497-98). Defendant

argues the "ALJ reasonably concluded that Plaintiff's willingness to mislead Ms.

Fusfield on the subject of her impairments reflected negatively on the value of Ms.

Fusfield's opinions." ECF No. 14 at 8. However, as noted by Plaintiff, the

evidence cited by the ALJ does not support a conclusion that Plaintiff intentionally

misled Ms. Fusfield about her heroin use, and therefore "does not undermine the

**B. DAA**

A social security claimant is not entitled to benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). Therefore, when there is medical evidence of drug or alcohol addiction, the ALJ must conduct a DAA analysis and determine whether drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). "The claimant bears the burden of

validity of her opinions." ECF No. 15 at 6-7. Regardless, as discussed above, the ALJ's rejection of Ms. Fusfield's opinions was not supported by substantial evidence, and they must be reconsidered on remand.

proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

Plaintiff argues the ALJ failed to "clearly distinguish[] between periods of use and abstinence" and "failed to consider the context of [Plaintiff's] treatment setting and that any improvement to her co-occurring mental disorders was due to this treatment." ECF No. 12 at 8. Social Security Ruling ("SSR") 13-2p, which explains the Commissioner's policy on "the analysis of substance abuse (or 'DAA') in a case involving co-occurring mental disorders," directs, in pertinent part, that the ALJ must consider periods of abstinence from drug and alcohol use that are

> long enough to allow the acute effects of drug and alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.

SSR 13-2p (February 20, 2013), *available at* 2013 WL 621536 at *12. Moreover, SSR 13-2p explicitly directs that if "the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), we will find that DAA is not material." SSR 13-2p at *12.

Defendant argues the ALJ properly found that Plaintiff's impairments, including substance abuse, satisfied the requirements of Listing 12.03; and, based on "evidence from a period when Plaintiff was not using drugs," the ALJ "reasonably concluded that when Plaintiff was not using drugs, she did not have

marked limitations in any area of functioning." ECF No. 14 at 3-4; Tr. 21-22

(citing Tr. 416, 434-36, 518-19, 537, 539, 541, 545, 558, 974, 1221). In finding

that Plaintiff met the Listing "including substance use," the ALJ relied heavily on

evidence of Plaintiff's "psychotic break in July/August 2014" and "exhibit[ion]

[of] increased symptoms in May/June 2015." Tr. 20. However, as noted by

Plaintiff, the ALJ failed to consider evidence that "exacerbations in her symptoms

were not wholly due to substance use, but persisted during periods of sobriety,"

including: (1) treatment notes indicating Plaintiff was abstinent from substance use

after her admitted relapse in May 2014; (2) treatment notes indicating that Plaintiff

had been incarcerated "for at least 3-4 weeks prior to her removal from jail and

placement as an inpatient at Fairfax Hospital" for a psychotic break in July 2014,

during which time she was sober and refused to take her medication; and perhaps

most notably, (3) Plaintiff had negative urine and blood drug screens in May 2014,

July 2014, May 2015, and July 2015. Tr. 7, 58, 524-29, 658, 959, 968, 1045, 1171,

1247. Moreover, while the ALJ correctly noted that treatment providers

"suspected" Plaintiff's increased mental health symptoms in May 2015 were due to

substance use, and Plaintiff refused to provide a urine sample at that time, those

same providers also acknowledged it was "unclear" whether Plaintiff's symptoms

were due to mental health issues or substance use. Tr. 864-77, 1056. An ALJ may

not "cherry-pick[ ]" aspects of the medical record and focus only on those aspects

that fail to support a finding of disability. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Finally, the ALJ's decision and Defendant's briefing acknowledge that prior to Plaintiff's increased mental health symptoms in May 2015, as cited by the ALJ to support the DAA finding, the record also indicates that Plaintiff was not taking her medications. Tr. 20, 579, 584, 862, 865, 877, 958-59, 969, 1149, 1154. Notably, Defendant recognized that "[a]fter being back on medication for a few weeks, Plaintiff's symptoms were only mild," and Defendant appears to concede that "[t]his shows that Plaintiff's psychotic episode occurred . . . because she temporarily stopped taking her medication." ECF No. 14 at 5-6 (citing Tr. 568, 579, 860). As noted by Plaintiff, the improvement in Plaintiff's symptoms after periods of sobriety coincided with "participating in a myriad of intensive treatment programs, aimed at treating both her DAA and her co-occurring mental disorders"; thus, Plaintiff contends that when "there is no evidence demonstrating the separate effects of [Plaintiff's] DAA treatment and her treatment for her co-occurring mental impairments, . . . [the] SSA directs a finding of non-materiality in such instances, because there is no clear evidence demonstrating that sobriety was the sole factor in [Plaintiff's] relative improvement." ECF No. 12 at 9.

Based on the foregoing, and in light of the need to reconsider the medical opinion evidence, which included findings that Plaintiff's impairments were not "primarily the result of alcohol or drug use within the past 60 days" (Tr. 394, 398,

401, 404, 976), the ALJ should reevaluate on remand whether substance use disorder was a contributing factor material to the determination of disability.

## C. Additional Assignments of Error

Plaintiff also challenges the ALJ's consideration of Plaintiff's symptom claims and the ALJ's conclusions at step three if Plaintiff stopped the substance use. ECF No. 12 at 9-12, 14-20. Because the analysis of these questions is dependent on the ALJ's evaluation of the medical opinion evidence and alleged improvement during periods of sobriety, which the ALJ is instructed to reconsider on remand, the Court declines to address these challenges here. On remand, the ALJ is instructed to conduct a new sequential analysis after reconsidering the medical opinion evidence and DAA analysis.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these

conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered medical opinion evidence and the DAA analysis, which calls into question whether the step three analysis, rejection of Plaintiff's symptom claims, and assessed RFC, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101.

The Court remands this case for further proceedings. On remand, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating each of the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ must reexamine whether

substance use disorder was a contributing factor to the determination of disability. The ALJ also should reconsider the step three analysis, Plaintiff's symptom claims, and the remaining steps in the sequential evaluation analysis. Finally, the ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** May 31, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge